# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK BRENGI, | CIVIL ACTION NO. |
| Plaintiff, | |
| v. | |
| AHLSTROM WINDSOR LOCKS, LLC | |
| Defendants | June 3, 2010 |

## COMPLAINT

### JURISDICTION AND VENUE

1. This is an action for damages, declaratory and injunctive relief, and attorney's fees brought pursuant to the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101 et seq., the Federal Family Leave Act (FMLA) 29 U.S.C. §2612, et seq., and the Connecticut Fair Employment Practices Act, C.G.S. § 46a-60(a) et seq. This action seeks declaratory, monetary, compensatory, liquidated and punitive damages, equitable relief, and attorneys' fees.

2. Jurisdiction of this action is invoked pursuant to 28 U.S.C. §§1331, 1343, and 42 U.S.C. §2000e-5(f)(3). This court has supplemental jurisdiction over the common law claims pursuant to 28 U.S.C. §1367, in that the common law claims are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue in this district is appropriate pursuant to 28 U.S.C. §1391 and 42 U.S.C. §2000e(f)(3), because this is the district in which the discriminatory conduct

occurred.

**PARTIES**

4.     The plaintiff, Mark Brengi, is a resident of the United States, actually residing in Windsor Locks, Connecticut.

5.     At all times relevant to this Complaint, the plaintiff was an employee of the defendant, as that term is defined by the Americans with Disabilities Act (ADA) 42 U.S.C. §12101 et seq., the Federal Family Leave Act (FMLA) 29 U.S.C. §2612, et seq., and the Connecticut Fair Employment Practices Act (CFEPA), C.G.S. §46a-51 (9).

6.     The defendant is Ahlstrom Windsor Locks, LLC which has a business address and principle place of business at 2 Elm Street, Windsor Locks, CT 06096. The defendant is engaged in a business affecting commerce and employs over 100 employees. At all times relevant to this complaint, the defendant has been an employer within the meaning of the Americans with Disabilities Act (ADA) 42 U.S.C. §12111(5), 29 U.S.C. §2612, et seq., the Federal Family Leave Act (FMLA), 29 U.S.C. §2612, et seq., and the Connecticut Fair Employment Practices Act (CFEPA) C.G.S. §46a-51(10). At all times relevant to the complaint, the defendant has also been the plaintiff's employer within the meaning of 42 U.S.C. §12111(5) and C.G.S. §§46a-51(10) and 46a-60.

7.     On or about July 16, 2009, the plaintiff filed administrative charges of discrimination on the basis of his disability with the Connecticut Commission of Human Rights and Opportunities and with the Equal Employment Opportunities Commission.

8.     The plaintiff received a release of jurisdiction from the Connecticut Commission of Human Rights and Opportunities. The plaintiff received a Notice of

Right to Sue from the Equal Employment Opportunity Commission.

9. The plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

**FACTS**

10. The plaintiff is an individual with a disability as that term is defined by the Americans with Disabilities Act, as amended and the Connecticut Fair Employment Practices Act, in that his left arm has been amputated. In the alternative, he has a record of a disability within the meaning of the ADAAA.

11. The plaintiff is a qualified individual with a disability, capable of performing all of the essential duties of his position as a machine tender, and/or many other open positions with reasonable accommodations.

12. The defendant employs more than 100 people.

13. The plaintiff was hired by defendant's predecessor in interest, Ahlstrom Dexter, LLC on June 27, 1989 as a packer. In September 1989 he was transferred to the position of Helper. In April 1993 he was promoted to the position of Operator. In April 1998 he was transferred to the position of Utility Operator. In 2003, he was promoted to the position of backtender. In February 2006, he was again promoted to the position of machine tender.

14. The duties of the machine tender are: setting up and operating the machine, and supervising and co-ordinating the activities of the machine crew.

15. The plaintiff has always performed my duties in a satisfactory or better manner. He consistently received satisfactory or better evaluations and raises.

16. On April 22, 2007, the plaintiff's left (non-master) arm was amputated as the result of a car accident. He was out of work from April 23, 2007 though October 3, 2007. Pursuant to Company policy, the plaintiff received leave for this period.

17. On October 3, 2007, the plaintiff was released to work four hours per day, with a lifting restriction. In February 2008, he was permitted to work 6 hours per day. n March 2008, he was released to work 8 hours per day with no medical restrictions.

18. From October 3, 2007 through March 18, 2008, the plaintiff performed machine tender duties with accommodations.

19. In February 2008, the plaintiff was evaluated by the defendant in his position as machinetender and was ranked as meets or above expectations in every area. The defendant noted that, "Mark is a fully trained Machinetender and is always making efforts to improve machine areas to make the area as safe as it can be. He is always working on his abilities as a Machinetender as he sets a high standard for himself in this area." The evaluation also recognized his commitment to safety, stating: "Mark was selected to be a member of the Safety Pillar due to his strong desire to change things bringing safety to the forefront."

20. On or about March 18, 2008, the defendant and plaintiff discussed his progress and potential accommodations. The defendant seemed reluctant to have the plaintiff remain in the position of machine tender despite the fact that no medical professional had suggested that the plaintiff could not safely perform his duties.

21. From approximately March 18, 2008 through approximately May 7, 2008, the plaintiff continued to perform the essential duties of his position as a machine tender with reasonable accommodations.

22. On May 7, 2008, the defendant informed the plaintiff that it had determined that he could not safely perform the duties of a machine tender. The plaintiff was told that he could either take an entry level position in Central Packing or else resign. There was no attempt to engage in the interactive process required by Connecticut State Law, and/or by the ADA. The plaintiff was not given any information as to why the defendant had allegedly decided that he could not safely perform his duties. The defendant sent the plaintiff home to think about what he wanted to do.

23. Later in the day on or about May 7, 2008, the plaintiff called plant manager Pat Faye and asked for a meeting on May 8, 2008. He also asked for a copy of any documents showing that he allegedly could not perform the duties of machine tender safely.

24. At the meeting on May 8, the plaintiff specifically mentioned the defendant's duty to accommodate him under the ADA. The plaintiff offered the defendant a copy of the employer's guide to the ADA. The plaintiff suggested that vocational experts that could help identify accommodation were available. The defendant refused the offer, and Bruce Cox, the defendant Director of Human Resources and Development, stated: "nobody is going to tell us how to run our company."

25. During the May 8th meeting, the plaintiff asked for an opportunity to respond to the defendant's alleged concerns. The plaintiff was sent home on paid leave and was told that he would be given an opportunity to respond.

26. The plaintiff received a document that had clearly been created *after* the plaintiff had asked for any documents showing that he could not safely perform the

machine tender duties. At no time has the plaintiff received any documents about the Company's purported analysis of his ability to safely perform the job that was created before May 8, 2009.

27. The documents that the plaintiff was given on May 8, 2008 noted seven tasks that were purportedly observed. Six of these involved concerns that the plaintiff could lose his balance while working. The seventh involved a report that the plaintiff had been seen bleeding at work, and had explained that he had cut himself earlier while at home. None of these tasks showed that the plaintiff was objectively unsafe.

28. On information and belief, the defendant at no time sought a medical assessment to determine if the plaintiff was more likely to lose his balance than other employees or to suffer greater injury if he did so. On information and belief, the defendant at no time sought objective evidence as to whether the plaintiff was more likely to lose his balance than other employees or to suffer greater injury if he did so. In fact, the defendant did not seek any objective evidence as to the likelihood that the plaintiff would suffer an injury if he were permitted to perform machine tender duties.

29. Based on information and belief, prior to deciding that the plaintiff could not safely perform the duties of a machine tender, the defendant did not undertake an objective and/or a medical assessment to determine: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm.

30. The document that the plaintiff was given on May 8, 2008, also listed 20 tasks that the defendant was allegedly concerned about the plaintiff's ability to perform. However, the defendant never asked the plaintiff if he could perform these tasks, asked

for medical evidence as to whether the plaintiff could safely perform those tasks, or asked to observe the plaintiff to determine if he could in fact perform these tasks. Several of these tasks were not essential functions of the position, others the plaintiff could perform with no difficulty- and indeed had been performing for months--while others could be performed with reasonable accommodations.

31. The document that the plaintiff was given on May 8, 2008, did not discuss his ability to perform the essential functions of the position - either with or without accommodations as is required by the ADA and CFEPA. In fact, it did not even identify what the defendant claimed the essential functions of the positions were.

32. On or about May 28, 2008, the plaintiff submitted a written response to the documents. In this response he explained that he <u>could</u> perform the essential functions of his position with reasonable accommodations. At no time did the defendant ever respond to this.

33. On or about June 16, 2008, the plaintiff was returned to work at a temporary position in the research and development department. He was told that he could work in this position while the defendant decided whether or not to return him to his machine tender position with reasonable accommodations.

34. On information and belief, the defendant had never determined if any risk of injury in the machine tender position was both imminent and substantial. Instead, the defendant removed the plaintiff from his position based on speculation and conjecture that he might in the future lose his balance and/or suffer an injury.

35. Between June 2008 and the date of his termination, there were a number of open positions with the defendant that the plaintiff could have performed with or

without a reasonable accommodation, including several supervisor positions and a position as an Environmental technician. The defendant refused to give the plaintiff any of these open positions as an accommodation.

36. Between June 2008 and October 2008, the defendant on several occasions asked the plaintiff to perform his duties as a machine tender. At no time was the plaintiff injured. At no time was he told that he had failed to perform his duties safely or effetely. When the plaintiff asked superintendent John Cambell what was going on, he told the plaintiff that it was "out of [his] hands."

37. On or about September 2008, Bruce Cox asked the plaintiff if he would be interested in working permanently in the Lab. The plaintiff inquired about pay. The plaintiff was told that Mr. Cox would get back to him about the wages.

38. On October 18, 2008, the plaintiff broke his ankle in a non-work related accident, and again took approved FMLA leave.

39. On or about November 15, 2008 - while out on FMLA and disability leave -the plaintiff was informed that the defendant would not return him to position as a machine tender but was assured that he would be given a position when he returned medical from leave.

40. On or about January 10, 2009, the plaintiff received a letter informing him that he would be terminated as of January 26, 2009 unless he could return to work, "full duty at a regular full time job."

41. On or about January 23, 2009, Cox called the plaintiff at home and told the plaintiff that he was no longer considered an employee of the defendant's. The plaintiff told Cox that he wanted to get back to work full time.

42. At the time he was terminated, the plaintiff could perform the essential functions of the machine tender position and of many other positions at the Company-- with reasonable accommodations.

43. The defendant did not engage in good faith in the interactive process with the plaintiff to help identify reasonable accommodations that could help the plaintiff remain at work and did not reasonably accommodate him. The defendant did not rely on the best available objective evidence in determining that the plaintiff could not safely perform the duties of machine tender.

44. From approximately October 3, 2007 until his termination, Cox repeatedly told the plaintiff that he should just go on long-term disability, and not try to return to work.

45. On information and belief, plaintiff's duties were re-assigned to individuals who had not exercised rights protected under the FMLA, CFEPA and/or the ADA and/or who were not physically disabled within the meaning of CFEPA and the ADA.

## COUNT ONE (FMLA)

1. The plaintiff hereby repeats, realleges and incorporates paragraphs 1-45 above.

46. On information and belief, the defendant has engaged in a pattern and practice of discriminating and retaliating against employees who exercised rights protected under the FMLA. On information and belief, the defendant has a pattern and practice of disciplining, demoting and or terminating employees who have exercised rights protected under the FMLA.

47. By the conduct described above, the Plaintiff exercised rights afforded to him pursuant to the FMLA.

48. The defendant's stated reason for removing the plaintiff from his regular position and for the termination are pretextual. The defendant's decisions were motivated by unlawful animus toward the plaintiff for having taken leave under the FMLA, or otherwise exercising rights protected by the Federal Family Medical Leave Act. By the conduct described above, the defendant violated the plaintiff's rights as protected by the FMLA, 29 U.S.C. §§ 2612, 2614 and 2615.

49. In terminating the plaintiff's employment, the defendant acted maliciously and wantonly, and with reckless indifference for plaintiff's federally protected rights.

50. As a result of the defendant's unlawful conduct, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, pension contributions, and other rights, privileges and conditions of employment, an interruption of his career and consequent loss of employment opportunities, pain and suffering, anxiety, humiliation and shame and other emotional distress.

## COUNT TWO: (CFEPA-Disability Discrimination- disparate treatment)

1. The plaintiff hereby repeats, realleges and incorporates paragraphs 1-50 above.

51. The plaintiff is a qualified individual with a physical disability within the meaning of CFEPA, C.G.S. § 46a-51(10) in that he has a chronic condition. The plaintiff exercised rights protected under the CFEPA by seeking accommodations for his disability.

52. Despite his disability, the plaintiff was able to safely perform the functions of his position and/or other positions with reasonable accommodations.

53. On information and belief, the defendant has engaged in a pattern and practice of discriminating against employees and prospective employees who are disabled within the meaning of CFEPA, including, but not limited to, subjecting them to greater scrutiny than other employees or prospective employees. On information and belief, the defendant has a pattern and practice of disciplining, demoting and or terminating employees who are disabled within the meaning of CFEPA, and/or refusing to grant reasonable accommodations.

54. By the above conduct, including the refusal to engage in the interactive process, the refusal to grant reasonable accommodations to the plaintiff, the refusal to return plaintiff to his duties as a machine tender, and the termination of the plaintiff, the defendant discriminated against the plaintiff in violation of the rights secured to him by CFEPA, C.G.S. §46a-60a1 and §46a-100 et seq.

55. The defendant's stated reasons for terminating the plaintiff's employment are pretextual. The defendant's decision was substantially motivated by unlawful animus toward the plaintiff because of his disability and the potential costs connected with this disability.

56. In terminating the plaintiff's employment, the defendant acted maliciously and wantonly, and with reckless indifference for plaintiff's rights.

57. As a result of the defendant's unlawful conduct, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, pension contributions, and other rights, privileges and conditions of

employment, an interruption of his career and consequent loss of employment opportunities, pain and suffering, anxiety, humiliation and shame and other emotional distress.

**COUNT FOUR (ADA-Disability Discrimination - disparate treatment)**

1.  The plaintiff hereby repeats, realleges and incorporates paragraphs 1-57 above.

58. The plaintiff is a qualified individual with a physical disability within the meaning of ADA, 42 U.S.C. §12111(8). In the alternative, the plaintiff was regarded by the defendant as having such a disability and/or had a record of such a disability. The plaintiff exercised rights protected under the ADA by seeking accommodations for his disability, including a leave of absence for surgery and light duty accommodations for one month.

59. Despite his disability, the plaintiff was able to safely perform the functions of his position.

60. On information and belief, the defendant has engaged in a pattern and practice of discriminating against employees and prospective employees who are disabled within the meaning of ADA, have a record of such a disability or are perceived as a having such a disability, including, but not limited to, subjecting them to greater scrutiny than other employees or prospective employees. On information and belief, the defendant has a pattern and practice of disciplining, demoting and or terminating employees who are disabled within the meaning of the ADA.

61. The plaintiff's disability, perceived disability or record of disability was a substantial motivating factor in the defendant's decision to terminate his employment.

62. The defendant's stated reasons for removing the plaintiff from his position as a machine tender refusing to engage in the interactive process, refusing to grant the plaintiff reasonable accommodations and for terminating the plaintiff's employment are pretextual. The defendant's decision was substantially motivated by unlawful animus toward the plaintiff because of his disability, perceived disability, or record of disability and the potential costs connected with this disability.

63. By the above conduct, including the failure to engage in the interactive process the refusal to grant reasonable accommodations, the removal of the plaintiff from his machine tender position, and the termination of the plaintiff, the defendant discriminated against the plaintiff in violation of the rights secured to him by the ADA.

64. In terminating the plaintiff's employment, the defendant acted maliciously and wantonly, and with reckless indifference for plaintiff's federally protected rights.

65. As a result of the defendant's unlawful conduct, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, pension contributions, and other rights, privileges and conditions of employment, an interruption of his career and consequent loss of employment opportunities, pain and suffering, anxiety, humiliation and shame and other emotional distress.

**COUNT FIVE: (ADA/CFEPA Disability Discrimination - Disparate Impact)**

1. The plaintiff hereby repeats, realleges and incorporates paragraphs 1-65 above.

66. The plaintiff is a qualified individual with a physical disability within the meaning of CFEPA and/or ADA. In the alternative, the plaintiff was regarded by the

defendant as having such a disability and/or had a record of such a disability.

67. Despite his disability, the plaintiff was able to safely perform the functions of his position.

68. The ADA and CFEPA prohibit the use of employment standards that screen out or tend to screen out an individual with a disability unless the standard, as used by the employer, is shown to be job-related for the position in question and consistent with business necessity.

69. The defendant has violated the ADA and CFEPA by utilizing standards that have the effect of discrimination on the basis of disability, and that as used by the defendant are not job related to the position at issue and consistent with business necessity.

70. By the above conduct, the defendant discriminated against the plaintiff in violation of the rights secured to him by the ADA.

71. In terminating the plaintiff's employment, the defendant acted maliciously and wantonly, and with reckless indifference for plaintiff's federally protected rights.

72. As a result of the defendants' unlawful conduct, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, pension contributions, and other rights, privileges and conditions of employment, an interruption of his career and consequent loss of employment opportunities, pain and suffering, anxiety, humiliation and shame and other emotional distress.

## DEMAND FOR RELIEF

**WHEREFORE**, the plaintiff respectfully requests this Court grant him the following relief:

1. Order the defendant to cease and desist from the discriminatory acts and practices;

2. Order the defendant to reinstate the plaintiff to the position that he would have been in absent the defendant's discriminatory treatment;

3. Order the defendant to make the plaintiff whole for all lost wages and benefits;

4. Award the plaintiff compensatory and punitive damages, including damages for pain and suffering;

5. Award the plaintiff liquidated damages;

6. Award the plaintiff reasonable attorneys fees interest and costs;

7. Award the plaintiff any other legal or equitable relief that the Court deems appropriate.

## REQUEST FOR TRIAL BY JURY

The plaintiff requests a trial by jury as to all claims to which he is entitled.

THE PLAINTIFF,

By: _____
Mary E. Kelly ct07419
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821
mekelly@lapm.org